## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM CUMMINGS,** | : | **CIVIL NO. 1:22-1118** |
| | : | |
| **Plaintiff,** | : | **(Judge Mannion)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **B. LAWTON,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   Factual Background

This is a *pro se* prisoner lawsuit filed by a state inmate William Cummings, who was housed at State Correctional Institution (SCI) Frackville in 2022. Cummings originally filed a complaint in state court, which was removed in July of 2022. Cummings' original complaint named approximately eleven individual defendants along with 100 John Doe defendants. (Doc. 1-1, ⁋ 4). The Court subsequently dismissed all claims and defendants except one surviving Eighth Amendment claim against Defendant Lawton alleging that Lawton gave him a moldy mattress and refused to provide him with adequate bedding after he complained. Cummings alleges that he directly suffered physical harm from this incident, stating that he got sick and vomited as a result of this mold exposure. (Id. ⁋ 9).

1

The Court granted Cummings leave to submit an amended complaint, and, in its order on May 9th, 2023, admonished him to "submit a single, comprehensive and coherent amended complaint" by May 31st, 2023. Cummings submitted an amended complaint on May 23rd, 2023, which we deem the operative pleading in this case.[1] The sole remaining defendant, B. Lawton, filed an answer to Cummings' original complaint, and contemporaneously filed a motion for judgment on the pleadings. (Docs. 64, 65). In this motion Lawton argues that Cummings' claims against him were not properly exhausted as required by the Prison Litigation Reform Act prior

---

[1] In his Answer and his Brief in Support of Motion for Judgment on the Pleadings, Defendant Lawton references Cummings' original complaint as the operative pleading, (Doc. 1-1), indicating that all plaintiff's attempts thereafter to amend his complaint were denied. (Doc. 68, at 1). It appears this confusion was created by Cummings' penchant for filing numerous for filing multiple and materially incomplete pleadings. Specifically, Cummings filed a motion to amend his complaint, (Doc. 53), which was denied, (Doc. 57, 61) at the same time he filed the amended complaint he had already been given leave to submit (Doc. 54). This is emblematic of the procedural confusion created by Cummings throughout this litigation, given his flurry of motions to amend frequently submitted in contravention of the rules of this Court. Thus, it appears, procedurally, the operative complaint is Cummings' Amended Complaint submitted on May 23rd, 2023, (Doc. 54), despite the court having denied his contemporaneous motion to amend. This understandable error is harmless and substantively inconsequential, as we have already addressed the substance of the additional claims alleged by Cummings in the Report and Recommendation denying his motion to amend, (Doc. 57), and found them to be insufficient to state a claim. And, regarding the original complaint, we have already dismissed all claims but the instant claim against Lawton that we address herein.

to the filing of this lawsuit. This motion is fully briefed and is, therefore, ripe for resolution. (Docs. 68, 70, 71, 72). For the reasons set forth below, we recommend that the motion for judgement on the pleadings be granted and the plaintiff's claims be dismissed.

## II.   Discussion

### A.   Motion for Judgment on the Pleadings – Standard of Review

Lawton has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In ruling on a motion for judgment on the pleadings, courts are to consider the pleadings and exhibits thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). Motions filed pursuant to Rule 12(c) are reviewed under the same standard that applies to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). See Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991); United States v. Cephalon, Inc., 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a

3

complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal

4

conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u>, at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>, at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial

courts that they must:

> [B]egin by identifying pleadings that because they are no more
> than conclusions are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations. When
> there are well-pleaded factual allegations, a court should assume
> their veracity and then determine whether they plausibly give rise
> to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must

contain more than mere legal labels and conclusions; it must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the

level of mere speculation. As the United States Court of Appeals for the Third

Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure
> to state a claim, district courts should conduct a two-part
> analysis. First, the factual and legal elements of a claim should
> be separated. The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard any
> legal conclusions. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show
> that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement
> to relief. A complaint has to "show" such an entitlement with its
> facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:

The Supreme Court in Twombly set forth the "plausibility"

6

standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

<u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. <u>Sands v.</u>

7

McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess Cummings' remaining claims.

**B.** **Cummings' Claim Against Defendant Lawton Is Unexhausted and Barred by the Federal Prison Litigation Reform Act.**

Defendant Lawton asserts that Cummings has failed to adequately exhaust his remedies as required by the Prison Litigation Reform Act (PLRA). In this case, the Department of Corrections maintains a general grievance system, DC-ADM 804, that offers a three-phase grievance and appeals procedure. Pursuant to DC-ADM 804, inmates first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred. If the inmate is unsatisfied with the initial review of his grievance, he may appeal the decision to the Facility Manager (Superintendent). Upon receiving a decision from the Superintendent, the inmate may file an appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 days of the Superintendent's decision.

In his motion for judgement on the pleadings, Defendant Lawton asks the court to dismiss the remaining Eighth Amendment claim against him because he contends that the plaintiff failed to fully and properly exhaust the administrative remedies available to him under Department of Corrections procedures. In this case, Cummings' alleged failure to pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be

brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, it is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that this exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a).... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own

mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000) (citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to this exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Bolla v. Strickland, 304 Fed.Appx. 22 (3d Cir. 2008); Jetter v. Beard, 183 Fed.Appx. 178 (3d Cir. 2006); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

Furthermore, applying this procedural default component to the exhaustion requirement, the Third Circuit has held that:

> As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form.

> And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA.

Williams v. Pennsylvania Dep't. of Corrections, 146 Fed.Appx. 554, 557 (3d Cir. 2005). Thus, "it is clear, regardless of the purpose of the requirement,

12

that <u>Spruill</u> requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." <u>Hemingway v. Ellers</u>, No. 07-1764, 2008 WL 3540526, *11 (M.D. Pa. Aug. 12, 2008).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. <u>See</u> <u>Camp v. Brennan</u>, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 Fed.Appx. 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," <u>Harris v. Armstrong</u>, 149 Fed.Appx. 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." <u>Davis</u>, 49 Fed.Appx. at 368. <u>See also</u> <u>Brown v. Croak</u>, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); <u>Camp v. Brennan</u>, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility

fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In this case it is entirely undisputed that Cummings failed to exhaust his administrative remedies with respect to his claims against Defendant Lawton because he did not file a grievance complaining about Defendant Lawton or the moldy mattress. Cummings original complaint alleged that Defendant Lawton gave him a moldy mattress on March 25th, 2022. A review of the grievance log during this time period shows that Cummings filed six complaints in March 2022, the last being on March 21st, 2022, and three grievances in April 2022. (Doc. 64-1). Two of these complaints were withdrawn, and the other seven are part of the record. (Docs. 64-1-64-8). Upon review, it appears none of the seven grievances mentioned either defendant Lawton or concerns regarding a moldy mattress. Thus, Cummings has failed to fully complete the prison grievance process and is barred from subsequently litigating this claim in federal court.

Cummings' does not aver that any of the grievances filed during March and April of 2022, or at any other time, show he complied with the exhaustion requirement. Instead, Cummings advanced two inconsistent claims, neither of which is persuasive. He first claims that he did try his best to exhaust all available remedies, but his attempts to avail himself of the grievance process

were thwarted by prison administrators who intimidated and threatened him. While barriers such as threats and intimidation by prison officials could conceivably fit the narrow exception to the exhaustion requirement, "[t]o defeat a failure-to-exhaust defense, an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." Rinaldi v. United States, 904 F.3d 257, 269 (3d Cir. 2018).

Cummings is unable to meet either of these requirements in this case. In the first instance, he has not stated with the requisite specificity sufficiently serious threats that would deter him from lodging a grievance. Both his complaint and brief in opposition state only generalized and conclusory statements that his attempts were "thwarted," or aimless, and often incomprehensible, accusations of verbal harassment unrelated to the grievance process. And, most notably, there is no evidence that any threats actually did deter Cummings from filing grievances. Quite the contrary, as the defendant points out, Cummings filed nine grievances in March and April of 2022 and another nine through July 14th, 2022. (Doc. 64-1).

In the alternative, Cummings seems to also argue that he did file grievances against Lawton, but that they were somehow not received as there

is no log with his signature showing he received the grievance he filed. (Doc. 72 ₧ 3). But here, again, the receipt of eighteen other grievances during the same time period thoroughly negate Cummings' argument that prison officials were refusing to log his grievances. Instead, the uncontested evidence indicates that prison staff accepted and addressed multiple grievances lodged by the plaintiff.

At base, Cummings' attempts to save his last remaining claim in this case are unavailing, because we are bound by the law that requires complete administrative exhaustion of claims prior to a case being brought in federal court, and the clear facts of this case demonstrate that Cummings has failed to meet this legal requirement. Accordingly, we recommend his Eighth Amendment claim against Defendant Lawton be dismissed.

### C.   <u>Cummings has failed to state a claim against any other defendant.</u>

As to any other claims purported to have been alleged in Cummings' amended complaint, he has simply failed to make the requisite well-pleaded allegations of wrongdoing of a constitutional dimension. In the Report and Recommendation recommending Cummings' motion to further amend his complaint be denied, the Court foreshadowed our reasoning in dismissing

Cummings' latest complaint and detailed the scattered nature of the instant

action, explaining:

> Over the ensuing year we have engaged in multiple efforts to try to assist Cummings in submitting a single, comprehensive, and coherent amended complaint. These efforts have been largely unavailing. Accordingly, as of September 2022, all of Cummings' claims with the exception of an Eighth Amendment claim lodged against Defendant Lawton, had been dismissed. (Doc. 13).

> Undeterred, Cummings continued to file a welter of motions to amend or supplement his complaint. (Docs. 14-16, 24-25, 27-30, 33. 34, 53, 54). Thus, presently before the court is the latest iteration of Cummings' complaint, a 15-page, 94-paragraph, pleading which purports to bring claims against more than 180 correctional defendants. (Doc. 54). The defendants have opposed this sweeping proposed amendment of Cummings' complaint, arguing that this pleading does not comport with the Federal Rules of Civil Procedure, and our own review of the proposed complaints reveal that Cummings' complaint contains a hodgepodge of allegations against scores of individuals involving distinct acts, allegedly committed by disparate actors and different times and places. Moreover, many of these allegations are presented in a cryptic fashion and include averments which fail to state a claim upon which relief may be granted.

(Doc. 57, at 2).

Our previous review of the amended complaint, (Doc. 57), found it

profoundly flawed on multiple scores, including that it "has not sufficiently

alleged personal involvement in constitutional torts by the more than one

hundred eighty defendants who are listed in his amended complaint," (Id., at

13); that it runs afoul of Rule 8 because it "is so 'rambling and unclear' that it

"may leave many 'defendants having to guess what of the many things

discussed constituted a [cause of action]," (<u>Id.</u>, at 16);  because many of his claims are based upon what constitutes verbal harassment and not a constitutional violation; and that "there is no single, coherent legal, logical, topical, or temporal connection between the various claims," (<u>Id.</u>, at 17), in violation of Rule 20 of the Federal Rules of Civil Procedure. Given the numerous deficiencies in Cummings' amended complaint, and his failure to exhaust the only remaining claim against Defendant Lawton, it appears Cummings has no leg left to stand on in this case and his complaint, in each iteration, should be dismissed.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Defendant B. Lawton's Motion for Judgment on the Pleadings, (Doc. 65), be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made

and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of November 2023.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

19